# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PAUL RAY BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:04CV00909 |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Paul Ray Brown seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claims for Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on August 9, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on November 2, 1948, and was 52 years of age on his alleged onset date of disability. He has a sixth grade education. Plaintiff's past relevant work is as a brick mason. Plaintiff alleges disability as of April 13, 2001 due to neck and arm pain, bad back pain, and limited endurance.

## The Administrative Proceedings

Plaintiff filed applications for Disability Insurance Benefits and SSI on June 28, 2001 (protective filing date), alleging disability as of April 13, 2001, due to neck and arm pain, bad back pain and limited endurance. The claims were denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held in Greensboro, North Carolina, on June 5, 2003, before ALJ Joyce Harrison Smith, and a decision denying benefits was issued on September 26, 2003. Plaintiff filed a request for review, and on August 9, 2004, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the nondisability requirements of the Social Security Act on April 13, 2001, his alleged onset date of disability, and remained insured through December 31, 2005.

2. Plaintiff has not engaged in substantial gainful activity since April 13, 2001, his alleged onset date of disability.

3-4. Plaintiff suffers from "severe" Hepatitis C; borderline intelligence; personality disorder NOS; and degenerative disc disease, cervical and lower spine, but does not have an impairment, or combination or impairments, that meets or equals the ones set forth in Appendix 1, Subpart P, Regulations Number 4.

5. Plaintiff's allegations concerning his limitations are not totally credible.

6-7. Considering all of the medical opinions in the record regarding the severity of Plaintiff's impairments, Plaintiff retains the residual functional capacity to perform a full range of simple, routine, repetitive, medium work.

8. Plaintiff is unable to perform his past relevant work as a brick mason.

9-12. Plaintiff is "an individual closely approaching advanced age," with a "marginal education," the residual functional capacity to perform substantially all of a full range of full range of medium work, and the transferability of skills is not an issue in this case.

13-14. Based on Plaintiff's age, education, work experience, and a residual functional capacity for medium work, and using Medical-Vocational Rules 203.18 and 203.11 as a framework for decision making, Plaintiff was "not disabled" at any time through September 26, 2003, the date of the ALJ's opinion.

15. Plaintiff was not under a "disability," as defined by the Social Security Act, at any time through September 26, 2003, the date of the ALJ's decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal

standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520 & 416.920 (2005). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

-4-

In this case, the ALJ found that Plaintiff met the nondisability requirements of the Social Security Act on April 13, 2001, his alleged onset date of disability, and remained insured through December 31, 2005. At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 13, 2001, his alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from severe Hepatitis C; borderline intelligence; personality disorder NOS; and degenerative disc disease, cervical and lower spine, but that he does not have an impairment, or combination of impairments, that met or equaled the ones listed in Appendix 1, Subpart P, Regulations Number 4. At step four, the ALJ found that, although Plaintiff retains the capacity to perform a full range of simple, routine, repetitive "medium work," he is unable to perform his past relevant work as a brick mason. Finally, the ALJ found at step five of the sequential evaluation that, based on Plaintiff's age, education, and past relevant work experience, as well as a residual functional capacity for substantially all of a full range of medium work, and using Medical-Vocational Rules 203.18 and 203.11 as a framework for decision making, there are a significant number of jobs in the national economy which Plaintiff is capable of performing. Thus, the ALJ found that Plaintiff was not disabled at any time through September 26, 2003, the date of the ALJ's decision.

In this action for judicial review, Plaintiff argues that the ALJ committed reversible error by failing to appropriately address the physical limitations imposed by Plaintiff's back impairment as set forth by Dr. Robert W. Nudelman; by failing to adequately apply Plaintiff's

-5-

"substantial mental impairments"; and by mischaracterizing the effects of Plaintiff's alcohol use, specifically with regards to his Hepatitis C. (Pleading No. 12, Pl.'s Br. Supp. Motion for J. Rev'g Comm'r, at 4-16, 8.)

The Commissioner's alcohol regulations provide that:

(a) If we find that you are disabled and have medical evidence of your . . . alcoholism, we must determine whether your . . . alcoholism is a contributing factor material to the determination of disability. . . .

(b)(1) The key factor we will examine in determining whether . . . alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using . . . alcohol.

(b)(2) In making this determination, we will evaluate which of your current physical and mental limitations . . . would remain if you stopped using . . . alcohol and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. §§ 404.1535(a), (b) & 416.935(a), (b) (2005). Furthermore, the ALJ must:

[D]istinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using . . . alcohol. The two are not mutually exclusive. Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too.

*Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.1998)(emphasis omitted). *See also Carter v. Apfel,* No. Civ.A. 5:97-0600, 2001 WL 40795, at *10 (S.D.W.Va. Jan. 17, 2001) ("Alcoholism is a contributing factor if the claimant would not be disabled if he stopped drinking.")(unpublished); *Wagner v. Apfel*, No. 98-2260, 1999 WL 1037573 n.2 (4th Cir. Nov. 16, 1999)(unpublished).

-6-

In the case at bar, the ALJ found that:

> [Plaintiff] was not experiencing any significant symptomatology that interfered with his ability to function *when he chose to do so.* . . . [Plaintiff's] main problem is his ongoing polysubstance abuse in which his father and neighbors give him alcohol on a regular basis. [Plaintiff] admitted that he continued drinking throughout the day and that his father and neighbors were the suppliers. The undersigned notes that [Plaintiff] has been noncompliant with treatment prescribed by his physician.

(Tr. at 26.)(emphasis added). It is clear from the record before the Court that the ALJ's finding that Plaintiff's alcoholism was a substantial contributing factor in the failure to receive treatment for his degenerative disc disease, Hepatitis C, and his mental impairments, and thus his inability to perform substantial gainful activity, is supported by substantial evidence.

As to Plaintiff's mental impairments, Rebecca I. Kincaid, the Psychiatric Consultative Examiner ("CE") stated in an August 9, 2001 report that Plaintiff has a sixth grade education, and that he had repeated one or more grades in elementary or middle school. (Tr. at 124.) The CE further found that Plaintiff has a borderline IQ, a limited ability to read and write, borderline to deficient cognitive skills, and extremely weak communication skills. *Id.* at 126. Plaintiff also told the CE that he usually lived alone and that he drank approximately two 12-packs of beer or two bottles of wine a day. *Id.* at 125.

There is no evidence in the record that Plaintiff has ever been treated on a routine, outpatient basis for any mental health disorder, including a substance disorder. However, Plaintiff was involuntarily committed to John Umstead Hospital for 21 days for inpatient

-7-

Case 1:04-cv-00909-WLO    Document 15    Filed 11/07/05    Page 7 of 11

treatment of alcoholism in April and May of 2001. *Id.* at 118-21. Additionally, between September of 2000 and July of 2001, Plaintiff sought emergency room care at least four times for acute alcohol intoxication. *Id.* at 129-86. On at least one of these occasions Plaintiff had attempted suicide. *Id.* at 129-34.

Plaintiff argues that in the absence of his alcoholism, his mental impairments of borderline intelligence and personality disorder NOS would prevent him from performing work that exists in the national economy. (Pleading No. 12 at 8-13.) The Court disagrees. As to Plaintiff's limited education and borderline intellectual functioning, Plaintiff testified that he has had a steady work history as a brick mason from 1986 until his alleged onset date of disability, April 13, 2001, when he became unable to work due to arm and back pain. *Id.* at 329. Fourth Circuit law is clear that a longstanding impairment is not disabling if a plaintiff has been able to work regularly for many years while affected to virtually the same extent as at the present. *Cauthen v. Finch*, 426 F.2d 891 (4th Cir. 1970). *See also Hazel v. Chater*, No. 96-1415, 1997 WL 218839, at *2 (4th Cir. May 2, 1997) ("The record contains no evidence that any aspect of [plaintiff's] mental condition negatively impacted on her ability to work in the past, and no evidence that her intellect or personality has significantly changed since she ceased working. The ALJ rationally relied on this fact in finding that she retains the mental capacity to perform her prior work.") In this case, Plaintiff does not allege that any deterioration of his mental state since he stopped working in April of 2001 is due to

-8-

anything except alcoholism. Accordingly, the Court holds that the ALJ's finding on this point is not in error.

As to Plaintiff's physical impairments, Plaintiff's treating gastroenterologist, Dr. John Hayes, stated that Plaintiff's Hepatitis C "portend[ed] a potential favorable response to treatment" due to its genotype, and determined that it could be best treated by referring Plaintiff to a teaching hospital for an interferon treatment study. (Tr. at 277.) However, Dr. Hayes was unable to complete the referral process due to Plaintiff's elevated liver enzymes, which Dr. Hayes attributed to Plaintiff's alcoholism. *See id.* at 278 ("[w]ill recheck liver function tests and see him again in 6 weeks to see if abstention of [sic] alcohol will significantly reduce his [liver function tests]). *See also id*. at 258 (liver function tests elevated due to alcohol abuse); *see also id*. at 257 (Plaintiff reports that he must refrain from alcohol for 30 days prior to Hepatitis C treatment and he has not been able to do so.).

Additionally, the Court notes that,

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

Social Security Ruling 82-59, *Titles II and XVI: Failure to Follow Prescribed Treatment* ("SSR 82-59"), at *1. Plaintiff testified at the hearing that he had begun to significantly limit his drinking in recent months in compliance with his doctors' instructions. *Id.* at 317. However, the ALJ remarked that Plaintiff appeared intoxicated at the hearing. *Id.* at 319-20.

-9-

Accordingly, Plaintiff's Hepatitis C remained untreated at the time of the hearing due to his alcoholism.

As to Plaintiff's degenerative disc disease, Dr. Robert W. Nudelman, Plaintiff's treating neurologist, found that Plaintiff's neck and back pain arose from extensive spurring and spondylite spurring at the C6-7 level and proposed a C6-7 anterior cervical diskectomy. *Id.* 303-05. Plaintiff was scheduled for back surgery when his liver enzymes were found to be significantly elevated during routine pre-surgical tests. *Id.* at 301. Dr. Nudelman ultimately determined Plaintiff would be unable to have back surgery until his Hepatitis C was treated. *Id.* at 257. As discussed above, Dr. Hayes was unable to refer Plaintiff for Hepatitis C treatment until Plaintiff reduced his alcohol usage. Accordingly, the Court finds that the ALJ's determination that Plaintiff's degenerative disc disease and Hepatitis C could reasonably be expected to respond to treatment but for Plaintiff's alcoholism is supported by substantial evidence.

Accordingly, there is substantial evidence to support the ALJ's determination that Plaintiff has, without justifiable cause, failed to follow the prescribed treatment of Drs. Hayes and Nudleman which could reasonably be expected to allow for interferon treatment of Plaintiff's Hepatitis C, thus allowing treatment of Plaintiff's degenerative disc disease, and thus ultimately placing Plaintiff is a position where he would again be capable of performing substantial gainful activity.

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment reversing the Commissioner [Pleading No. 11] be denied, that the Commissioner's motion for judgment on the pleadings [Pleading No. 13] be granted, and that the decision of the Commissioner be affirmed.

                                           /s/ P. Trevor Sharp
                                  United States Magistrate Judge

Date: November 7, 2005